**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRACY LEE MATCHESON,** | : | **Civil No. 1:16-CV-671** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Social Security appeals frequently entail review of an Administrative Law Judge's assessment of a claimant's credibility, and evaluation of competing medical evidence.  So it is in this case.

In the instant case we are called upon to review a decision by a Social Security Administrative Law Judge (ALJ) that engaged in a fundamental form of legal and factual analysis that is commonplace in Social Security appeals:  the weighing of competing medical evidence.  In the instant case, the ALJ reviewed the medical opinion of the plaintiff's treating physician, which concluded that Ms. Matcheson was disabled, and the opinions of two state agency medical sources,

who found that she retained the residual functional capacity to perform a range of light work.

The ALJ found that Ms. Matcheson could perform a limited scope of light work, and concluded that she was not disabled. (Tr. 19-36.) In reaching this conclusion the ALJ noted that this treating physician's opinion was undermined by the claimant herself since Ms. Matcheson had applied for unemployment benefits during the time frame when she claimed she was disabled. In applying for these benefits, Ms. Matcheson certified that she was capable of returning to work, an attestation that was at odds with her claim of total disability. (Tr. 30.) Furthermore, the ALJ observed that Ms. Matcheson had actually worked, albeit on a part-time basis, while seeking disability benefits, conduct that was also inconsistent with a claim of complete disability. (Id.) Further, the ALJ carefully considered the opinion of Ms. Matcheson's treating doctor, but ultimately found that this opinion was unpersuasive since the doctor's opinion was thoroughly contradicted by his own treatment records, treatment records which noted that Matheson " seems to be complaining of pain that is inconsistent or somewhat out of kilter with her physical appearance." (Tr. 32.)

Given the deferential standard of review that applies to Social Security Appeals, which calls upon us to simply determine whether substantial evidence

supports the ALJ's findings, we conclude that substantial evidence does exist in this case which justified the ALJ's evaluation of this medical opinion evidence, and the residual functional capacity determination of Matcheson which flowed from that assessment of the medical evidence. Therefore, for the reasons set forth below, we recommend that the district court affirm the decision of the Commissioner in this case.

## II.    Statement of Facts and of the Case

On October 25, 2013, Matcheson applied for benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f (Tr. 218-30).  In this application, Matcheson alleged that she suffered from disability beginning October 3, 2013, due to a prior neck injury and learning disability. (Tr.160, 180.)  Matcheson was 44 years old at the time of her alleged onset of disability and thus was considered a "younger person" under the Commissioner's regulations.  20 C.F.R. § 404.1563 (c), 416.963 (c). (Tr. 160.)

While Matcheson's application for these benefits was submitted in October of 2013, the injury which she alleged was disabling had initially taken place more than five years earlier in July of 2008 when Matcheson stated that she injured her neck in 2008 while working as a nurse's aide/transportation coordinator.  (Tr. 166, 422.)  Despite suffering this injury in July of 2008, Matcheson had remained

employed at this job until 2011 when her employer terminated her employment for allegedly violating workplace rules, taking extended rest breaks, being discourteous, violating safety procedures, threatening a coworker, violating the sexual harassment policy, and violating a resident's rights. (Tr. 266-67.) Following her discharge from this job, Matcheson applied for, and received, unemployment compensation benefits beginning December 11, 2011. (Tr. 266.) As part of this process, Matcheson certified that she was ready, willing, and able to work and stated that she had, in fact, applied for employment. (Tr. 262, 271-79.) Moreover, while this disability application was pending, beginning around September 2014, Matcheson commenced working as a companion for elderly people, working part-time two hours per day, and two days a week. (Tr. 49-50.)

With Matcheson's 2013 disability application based upon the effects of a 2008 cervical injury, the ALJ in this case was required to consider three medical opinions, an opinion from a treating physician for Matcheson, Dr. Horchos, and two state agency medical sources, Dr. Kozicki and Dr. Potera. (Tr. 32-36.) These medical sources reached markedly different conclusions regarding Matcheson's capacity to perform work. For his part, Dr. Horchos opined in two check box forms that Matcheson was disabled due to her cervical injuries. (Tr. 465-66, 534-36.) Dr. Horchos' treatment records, however, provided a very different picture

concerning Matcheson's physical limitations and abilities.  Dr. Horchos' treatment notes for the relevant period beginning in October 2013 and continuing through July 2014, reflected that Matcheson had overall normal to benign findings.  (Tr. 415-19, 467-482.)  Specifically, Matcheson's bilateral lower extremity strength was rated as good or fair by Dr. Horchos.  (Tr. 467, 469, 471.)  Her bilateral upper strength was also considered good by her treating physician.  (Tr. 467, 469, 471, 475, 476, 478, and 480.)  Her straight-leg-raising and femoral stretch nerve tests were normal, (Tr. 415, 469, 473, 475, 478, 480.), and her cervical range of motion was considered "good."  (Tr. 467.)  While Matcheson's lumbar range of motion was impaired when bending forward, Dr. Horchos found that she had full sideways bending.  (Tr. 467.)  Additionally, Dr. Horchos observed that the compression of Matcheson's cervical spine was "not particularly painful."  (Tr. 467.)

In fact, Dr. Horchos documented an inconsistency between Matcheson's physical condition and her complaints of pain, stating that Matcheson "seems to be complaining of pain that is inconsistent or somewhat out of kilter with her physical appearance."  (Tr. 468.)  Thus, the check box notations made by Dr. Horchos in Matcheson's disability assessment forms were at odds with his own treatment notes, which documented an inconsistency between Matcheson's complaints and her physical appearance.

5

Dr. Horchos' opinion was also at odds with the opinions of two state agency medical experts, Dr. Kozicki and Dr. Potera, both of whom concluded that Matcheson was capable of performing a limited scope of light work. Thus, Dr. Kozicki performed a consultative examination of Matcheson in February of 2014. (Tr. 459-62.) Following this examination, Dr. Kozicki found that Matcheson was capable of lifting and carrying up to 20 pounds and could perform tasks that entailed occasional stooping and crouching. (Id.) Dr. Kozicki also concluded that Matcheson could stand or walk for up to 4 hours during a work day. (Id.) Likewise, Dr. Leo Potera, a state agency physician, reviewed the medical evidence of record in February of 2014, and concluded that Matcheson retained the residual functional capacity to perform an array of light work. (Tr. 160-77.)

These contrasting medical opinions rested upon a mixed medical record, albeit a record which provided substantial factual support for the opinions of those experts who opined that Matcheson retained the residual functional capacity to perform some light work. Significantly, the treatment records of Matcheson's treating physician, Dr. Horchos, supported for the proposition that Matcheson could perform light work, and indicated that her claims of total disability were "out of kilter" with her physical appearance. (Tr. 468.)

It was against this medical and factual backdrop that the ALJ conducted a hearing considering Matcheson's disability application on April 29, 2015. (Tr.43-71.) At this hearing. Ms. Matcheson and a vocational expert appeared and testified. (Id.) Following this hearing, on July 17, 2015, the ALJ issued a decision denying Matcheson's application for disability benefits. (Tr. 19-36.) In this decision, the ALJ first found that Matcheson met the insured requirements of the Act, (Tr.24.), and then at Step 2 of the five step sequential analysis process that applies to Social Security disability claims concluded that Matcheson experienced the following severe impairments: degenerative disc and joint disease of the cervical and lumbar spine. (Tr. 25.) At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Matcheson's impairments met a listing which would define her as *per se* disabled, (Tr. 24.), but also found that she could not return to her past employment due to these impairments. (Tr. 35.)

The ALJ then engaged in a lengthy and exhaustive analysis of the medical reports and opinion evidence. (Tr. 29-35.) At the conclusion of this thorough assessment the ALJ found that Matcheson retained the residual functional capacity to perform a limited range of light work. (Tr. 30.) Given this residual functional capacity assessment, consistent with the hearing testimony of the vocational

expert, the ALJ determined that there were positions available to Matcheson in the national economy and denied her application for disability benefits. (Tr. 35.)

In making this determination, the ALJ was required to evaluate the opinion testimony of the various medical sources. On this score, the ALJ assigned greater weight to the opinions of Dr. Kozicki and Dr. Potera, concluding that those opinions were more consistent with the plaintiff's overall medical record, and with Matcheson's own reported activities and part-time employment. (Tr. 32-4.) The ALJ afforded less weight to the opinion of Matcheson's treating physician, Dr. Horchos, observing that this opinion was less persuasive since it was not supported by the doctor's own clinical findings, or with the claimant's activities of daily living, which included part-time employment and the attestation in her unemployment compensation benefit applications that she was ready, willing and able to work. (Tr. 30-2.) Indeed, the ALJ aptly observed that Dr. Horchos' treatment notes undermined Matcheson's disability claim since those notes reflected that Matcheson "seems to be complaining of pain that is inconsistent or somewhat out of kilter with her physical appearance." (Tr. 32, 468.)

This appeal followed. (Doc. 1.) On appeal, Matcheson attacks the ALJ's weighing of the medical opinion evidence, arguing that her treating physician's assessment—an assessment which was contradicted by the doctor's own treatment

notes—should have received controlling weight. The parties have fully briefed these issues, (Docs. 8 and 9.), and this case is ripe for resolution. For the reasons set forth below, we find, under the deferential standard of review which applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we recommend that the district court affirm that finding.

## III.    Discussion

### A. Substantial Evidence Review – the Role of the Administrative Law Judge and the Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful

activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this

Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The

question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and

the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).  Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')."  Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## B. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

As in this case, Social Security appeals frequently entail review of an Administrative Law Judge's assessment of a claimant's credibility, and evaluation of competing medical evidence.  This evaluation is conducted pursuant to clearly defined legal benchmarks.  The Commissioner's regulations define medical

opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and, therefore, their opinions generally entitled to more weight. <u>See</u> 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians

and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate a number of medical opinions tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions deserve greater weight.

In making this assessment of medical opinion evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Moreover, in determining the weight to be given to a treating source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the

claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

### C. **Substantial Evidence Supports the ALJ's Credibility Determinations and Residual Functional Capacity Assessment**

In this case our review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Guided by this deferential standard of review, we also recognize that, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."

<u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707.

In the instant case, the thorough opinion of the ALJ meets all of the benchmarks prescribed by law. The ALJ's decision to afford little weight to the opinion expressed by Dr. Horchos was fully supported by substantial evidence in the administrative record, and the grounds for that decision were fully, and cogently, explained by the ALJ in her decision. Indeed, the ALJ's judgment on this score, weighing medical opinion evidence, is legally supported in at least three independent ways.

At the outset, we note that Dr. Horchos' treating source opinions were made in a singularly unpersuasive fashion through cursory notations on two check box forms. On this score, it is well settled that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993).

Second, the strength of this weak evidence was then further eroded when by the fact that Matcheson was employed, part-time, during her period of claimed disability and had previously certified in unemployment compensation applications

20

that she was ready, willing and able to work. Thus, Dr. Horchos' opinion that Matcheson was totally disabled was actually contradicted by Matcheson's own words and deeds. When considering the weight to be given to a treating source opinion and "in assessing a claimant's credibility: 'it was entirely proper for the ALJ to consider that [the claimant's] receipt of unemployment benefits was inconsistent with a claim of disability during the same period. See, e.g., Johnson v. Chater, 108 F.3d 178, 180 (8th Cir.1997) (application for unemployment compensation benefits can adversely affect a claimant's credibility because of admission of ability to work required for unemployment benefits).' Myers v. Barnhart, 57 F. App'x 990, 997 (3d Cir.2003)." Love v. Astrue, No. 1:12-CV-1923, 2014 WL 4915998, at *7 (M.D. Pa. Sept. 30, 2014). Likewise, evidence that a disability claimant is able to maintain part-time employment is relevant and undermines both the credibility of the claimant, as well as the validity of any medical opinion which suggests that a claimant who is employed part-time is incapable of work. See Forster v. Colvin, 208 F. Supp. 3d 636, 639 (M.D. Pa. 2015). Therefore, this evidence provided by Matcheson, which contradicted her treating doctor's opinion, fully justified the ALJ's decision to afford that opinion little weight.

Finally, it is clearly established that an ALJ may discount a treating source opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). These settled principles also apply here, and support the ALJ's decision to give Dr. Horchos' opinion little weight. In this case, Dr. Horchos opined in a check box form that Matcheson was disabled due to her cervical injuries. (Tr. 465-66, 534-36.) However, Dr. Horchos' treatment records provided a very different picture concerning Matcheson's physical limitations and abilities since those treatment notes revealed that Matcheson had overall normal to benign findings. (Tr. 415-19, 467-482.) Thus, Dr. Horchos rated Matcheson's bilateral lower extremity strength as good or fair, and found her bilateral upper strength to be good. (Tr. 467, 469, 471, 475, 476, 478, 480.) Dr. Horchos also documented that Matcheson's straight-leg-raising and femoral stretch nerve tests were normal; (Tr. 415, 469, 473, 475, 478, 480.), that her cervical range of motion was considered "good;" (Tr. 467.), and observed that the compression of Matcheson's cervical spine was "not particularly painful." (Tr. 467.) In fact, Dr. Horchos

refuted his own medical opinion when he described in his treatment notes a profound inconsistency between Matcheson's physical condition and her complaints of pain, stating that Matcheson "seems to be complaining of pain that is inconsistent or somewhat out of kilter with her physical appearance." (Tr. 468.)

Given these profound inconsistencies between the treating source opinion and the treatment records, as well as Matcheson's own statements and conduct which undermined that medical opinion, under the deferential standard of review which applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's decision to afford this treating source opinion little weight. Therefore, we recommend that the district court affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

## IV  Recommendation

Accordingly, for the forgoing reasons, IT IS RECOMMENDED that the district court AFFIRM the Commissioner's decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within

fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 8th day of August, 2017.

  *s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge